**UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **AHNNA KRISTI WILBOURN,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. 04-CV-0641-CVE-PJC |
| ) | |
| **HOME OF HOPE, INC.**, an Oklahoma ) | |
| not-for-profit corporation, ) | |
| ) | |
| **Defendant.** ) | |

**OPINION AND ORDER**

Now before the Court is the Motion for Summary Judgment (Dkt. # 13) filed by defendant Home of Hope, Inc. ("Home of Hope"). Plaintiff Ahnna Kristi Wilbourn ("Wilbourn") filed a petition in state court on July 23, 2004, alleging retaliatory discharge under Okla. Stat. tit. 85, §§ 5, 6, sexual harassment under Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. § 2000e et seq.), and intentional infliction of emotional distress. Defendant removed the action to this Court on August 18, 2004. Following the completion of discovery, plaintiff dismissed her claims for retaliatory discharge and intentional infliction of emotional distress. She asserted in the Joint Status Report, and again in her response to defendant's motion for summary judgment, that she has a claim for negligence, but she did not state a claim for negligence in her Petition. Defendant seeks summary judgment on any remaining claims.

**I.**

Home of Hope provides services to individuals with developmental disabilities. Wilbourn began employment with Home of Hope in 2002 and worked at the Home of Hope Rogers County Training Facility. She received and reviewed the Home of Hope Employee Handbook when she was hired. The Handbook includes an "EEO Creed" in which Home of Hope affirms a policy of equal

opportunity and nondiscrimination. The Handbook indicates that Home of Hope specifically prohibits harassment and defines harassment, in part, as "any conduct which has the purpose and effect of creating an intimidating, hostile or other offensive working environment."

The Handbook indicates that Home of Hope considers harassment to be a "serious violation" and all employees are to report sexual harassment. It provides, in particular, that "[a]ny employee, who is subjected to, observes or believes they have experienced harassment or intimidation should immediately notify the offending individual and immediately contact Human Resources." The Handbook specifies a dispute resolution procedure for employees which instructs them to appeal up the management "chain of command" to solve employment-related problems. In addition to the Handbook, plaintiff also he received orientation training from Home of Hope on how to identify, report, and prevent sexual harassment.

In December 2002, Home of Hope promoted plaintiff to a supervisory position, "Shop Manager," and Elton Sunday became her supervisor. Plaintiff supervised two individuals on a full-time basis, and two when they were in the shop with their developmentally disabled clients. She supervised one of those employees, Shane Wilmoth, from December 2002 until July 25, 2003, but she had no authority to demote Wilmoth or terminate his employment. Plaintiff claims that Wilmoth called her a "bitch" between five and ten times and, when she reported this conduct to Sunday, Sunday either failed to act or instructed her to complete a written "incident" report and then failed to take any action against Wilmoth.

Plaintiff also claims that, prior to her employment at Home of Hope, she had been involved in a physically and emotionally abusive relationship for twenty-four years, and Sunday was aware of that relationship. She asserts that she informed Sunday that, because of that relationship, she was

finding it increasingly difficult to work with Wilmoth. She also claims that she told Sunday she would have to quit if Wilmoth's conduct did not stop.

On July 24, 2003, plaintiff and Wilmoth became involved in an argument. Toward the end of the exchange, Wilbourn told Wilmoth to "remove his hat so his brain could get some air." In turn, Wilmoth responded with a vulgar and sexually explicit remark directed at her. Plaintiff asserts that he also told her that a woman's place is in the home and that he would not take orders from a woman, but it is not clear whether he made this statement on July 24, 2003. She claims that some of Wilmoth's sexually harassing conduct occurred in the presence of management and that she reported it. Again, however, it is not clear whether any of Wilmoth's alleged sexually harassing conduct occurred in the presence of management on July 24, 2003. In any event, both Wilbourn and Wilmoth were instructed to leave for the remainder of the day while Sunday investigated the incident. The next day, on July 25, 2003, both Wilbourn and Wilmoth were individually counseled and given "Written Reprimands" for their respective roles in the argument on July 24, 2003.

Upon receiving her counseling and Written Reprimand, plaintiff resigned her employment at Home of Hope. There is no evidence in the record indicating that she would have been demoted, transferred, or suspended, or that she would have lost pay or any other tangible benefit of employment as a result of the employment action. She testified that she quit her employment because she was upset by the Written Reprimand given to her by Sunday. She also testified that she offered to return to work without any additional condition or restrictions. In her affidavit, however, she claims that she quit because she felt she could no longer continue to work at Home of Hope due to the emotional distress that she was enduring and because Sunday had not taken any corrective action to prevent Wilmoth from continuing his abusive conduct despite her having notified Sunday

3

both orally and in written form. She admits that Wilmoth's conduct did not prevent her from completing her work.

Plaintiff admits that she never reported any sexual harassment to anyone in management or human resources at Home of Hope other than Sunday. She claims that Rick Davis, to whom Sunday reported, told her to notify Sunday of any and all problems, complaints, or issues. Sunday affied that plaintiff never reported any conduct by Wilmoth that plaintiff considered to be sexual harassment or to create a sexually hostile working environment. He also affied that, if plaintiff had made such reports, he would have instructed her to reprimand the employee and then prepare either a Written Counseling Notice or a Written Reprimand form. Incident reports are utilized to report on-the-job injuries and illnesses — not misconduct by employees. The incident reports prepared by plaintiff do not suggest that she had any concerns about sexual harassment or a hostile work environment. Home of Hope denies awareness of any claims of sexual harassment with respect to Wilmoth's conduct.

## II.

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 317. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but

rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Id. at 327.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 250. In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

### III.

To show actionable sexually discriminating or harassing conduct by Wilmoth for which Home of Hope would be liable under Title VII (42 U.S.C. § 2000e-2(a)(1)), Wilbourn must demonstrate that the terms and conditions of her employment were negatively impacted by Wilmoth's behavior. More specifically, she must show that a rational jury could find that the "workplace [was] permeated with 'discriminatory intimidation, ridicule and insult,' that [was] sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment." Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993) (quoting Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 64-65 (1986)). "The plaintiff must produce evidence

5

that she was the object of harassment because of her gender." Penry v. Fed. Home Loan Bank, 155 F.3d 1257, 1261 (10th Cir. 1998). The frequency and severity of the discriminatory conduct, whether it is physically threatening, humiliating, or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance, are all factors to be considered in the course of this determination. Harris, 510 U.S. at 23. The Supreme Court has emphasized that

> [a] sexually objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile and abusive, and one that the victim in fact did perceive to be so. . . . [S]imple teasing, offhand comments and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment.

Faragher v. City of Boca Raton, 524 U.S. 775, 787-88 (1998) (internal quotations and citations omitted). Further, the Tenth Circuit has clarified that to demonstrate a hostile work environment, a plaintiff must present "admissible evidence that she was subjected to a steady barrage of opprobrious [sexual] comments." Gross v. Burggraf Const. Co., 53 F.3d 1531, 1543 (10th Cir. 1995). However, the plaintiff "need not demonstrate psychological harm, nor is she required to show that her work suffered as a result of the harassment." Penry, 155 F.3d at 1261.

Home of Hope argues that Wilbourn's allegations fail to raise a colorable hostile work environment because she was the accused harasser's supervisor. However, Home of Hope offers no authority for this position. Sexual harassment generally occurs either "(1) where an employer's conduct creates a work environment that is hostile or abusive to women (the so-called hostile work environment theory, . . .) or (2) where specific benefits of employment are conditioned on sexual demands (the so-called quid pro quo theory, . . .)." Ball v. Renner, 54 F.3d 664, 665 n.1 (10th Cir. 1995) (citations omitted). This is not a quid pro quo case. Significantly, the Tenth Circuit has stated that "[a]ny person in an employment situation, whether a supervisor or a subordinate, can create a

hostile work environment.  Starrett v. Wadley, 876 F.2d 808, 820 (10th Cir. 1989).  A hostile work environment can be created by subordinates.  See Cooper-Schut v. Visteon Automotive Systems, 361 F.3d 421, 424-25 (7th Cir. 2004).

Wilbourn has alleged that Wilmoth called her a "bitch" five to ten times, apparently over the course of the seven months she supervised him.  There is no evidence other than her testimony to support the allegation, but, if true, repeated use of that overtly sexual epithet in reference to an employee can be characterized as harassment.  See, e.g., Winsor v. Hinckley Dodge, Inc., 79 F.3d 996, 1000 (10th Cir. 1996).  If tolerated, it can also be characterized as creating a hostile work environment.  Id. at 1002.  Wilbourn claims to have reported Wilmoth to Sunday and to have made "Incident Reports," as to Wilmoth's conduct, but there is no evidence that Wilbourn reprimanded Wilmoth.  Yet, Wilbourn has alleged that she found it increasingly difficult to work with Wilmoth and that she suffered emotional distress due to his conduct. Viewed in the light most favorable to her, the issues of whether Wilmoth created a hostile work environment and, if so, whether the environment altered the conditions of plaintiff's employment or unreasonably interfered with her work performance are issues of fact for the jury.

Wilbourn also describes one incident in which Wilmoth, in response to an insult by Wilbourn, made one vulgar and sexually explicit comment to her and, in another act of marked insubordination, explained his view that women are inferior to men and that he disliked being supervised by a woman.  This type of conduct clearly qualifies as offensive, hostile, and abusive, and the evidence clearly shows that plaintiff's supervisor reprimanded Wilmoth for it.  Sunday also reprimanded  plaintiff for her role in the incident.  A rational jury could consider this one isolated incident serious enough to effect discriminatory changes in the terms and conditions of plaintiff's

employment or characterize a workplace permeated with discriminatory intimidation, ridicule and insult sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment, when considered in connection with the alleged name-calling. Thus, the Court finds that plaintiff has shown the existence of genuine issues of material fact as to whether plaintiff was subjected to sexually harassing or discriminatory conduct.

Wilbourn has not shown the existence of a genuine issue of material fact as to whether she was constructively discharged.

> A constructive discharge occurs when an employer, through unlawful acts, makes working conditions so intolerable that a reasonable person in the employee's position would feel forced to resign. Working conditions must be so severe that the plaintiff simply had no choice but to quit. In contrast, a plaintiff who voluntarily resigns cannot claim that he or she was constructively discharged.

Exum v. U.S. Olympic Committee, 389 F.3d 1130, 1135-36 (10th Cir. 2004) (citations omitted). The evidence shows that plaintiff became upset after she was reprimanded and voluntarily resigned her employment. She testified that she quit because of the Written Reprimand and that she would have gone back to work if permitted.

Wilbourn claims that she had told Elton Sunday she would have to quit if Wilmoth's discriminatory conduct did not stop and that she suffered emotional distress as a result of Wilmoth's conduct. As the Tenth Circuit has explained, "the fact that a plaintiff subjectively considers his or her workplace stressful and may have suffered personal health problems as a result is not an objective criterion used to determine if a reasonable employee would have been compelled to resign." Id. at 1336 n.7 (citing Sanchez v. Denver Pub. Sch., 164 F.3d 527, 534 (10th Cir. 1998)). Wilbourn voluntarily resigned; she was not constructively discharged. No genuine issue of material fact exists as to this issue.

Home of Hope asserts that Wilbourn's failure to take advantage of the company's preventive and corrective sexual harassment policy gives rise to an affirmative defense to liability for the alleged harassment. This defense is available only if the alleged harassment has not resulted in a "tangible employment action" such as "hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 761, 765 (1998); Faragher, 524 U.S. at 807. The Court's finding that Wilbourn was not constructively discharged makes the defense available.

However, to prevail on this affirmative defense at the summary judgment stage, a defendant must show that there is no genuine issue of material fact that (1) it exercised reasonable care to prevent and promptly correct any sexually harassing behavior, and (2) that the plaintiff unreasonably failed to take advantage of the opportunities provided by the defendant employer to avoid the harm. Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 765 (1998); Faragher, 524 U.S. at 807. "Depending on the employment context, proof that an employer has promulgated an antiharassment policy with a complaint procedure may be sufficient for the employer to show that it has taken reasonable care to prevent harassment. Conatzer v. Medical Professional Bldg. Services, Inc., 255 F. Supp. 2d 1259, 1268 (N.D. Okla. 2003), aff'd No. 03-5074, 2004 WL 789801 (10th Cir. April 13, 2004) (unpublished) (citing Faragher, 524 U.S. at 807.

Home of Hope has clearly taken reasonable care to prevent harassment, but plaintiff has shown that there is a genuine issue of material fact as to whether Home of Hope exercised reasonable care to promptly correct it. Plaintiff has alleged that Davis instructed her to take such employment- related problems to Sunday, and she has alleged that Sunday took no action in response to her numerous complaints. Again, there is nothing to support these allegations other than

9

plaintiff's testimony, but the Court is obliged to construe the record in the light most favorable to her. Complaints of sexual harassment that are communicated by an employee to a supervisor can be imputed to higher management for purposes of determining whether the employer knew of the harassing behavior. Id. at 1270.

Even if defendant were able to show that it exercised reasonable care to prevent and promptly correct any sexually harassing behavior, plaintiff has raised a genuine issue of material fact as to the second element of the Faragher/Ellerth defense. Demonstration that an employee failed to use a complaint procedure provided by the employer normally suffices to satisfy the employer's burden under the second element. Faragher, 524 U.S. at 807-08; Ellerth, 524 U.S. at 765; Conatzer, 255 F. Supp. 2d at 1270. Home of Hope argues that, under the written policies and procedures that were provided and explained to plaintiff, she was obliged to contact human resources and complain to her supervisor, and then his supervisors, in the event she experienced sexual harassment. She claims that the policies and procedures were overridden by the written command of Sunday's supervisor, Davis. It is a question of fact for the jury as to whether it was reasonable for plaintiff to interpret Davis' directive as precluding her from contacting human resources or going "up the chain of command" if Sunday failed to take action upon her complaint. Of course, it is also a question of fact as to whether plaintiff actually complained to Sunday at all.

Finally, as mentioned above, the petition contains no language stating a negligence claim. However, defendant acknowledges that Title VII has a derivative negligence component.

> The Supreme Court recognized in Faragher and Ellerth the continuing validity of negligence as a separate basis for employer liability under Title VII. Under this theory of employer liability, plaintiff must establish that the employer had actual or constructive knowledge of the hostile work environment but did not adequately respond to notice of the harassment. The Tenth Circuit has also held that, in this context, employer negligence consists of failing to remedy or prevent a hostile or

>offensive work environment of which management-level employees knew, or in the exercise of reasonable care should have known. Although many of the same facts are relevant to both negligence and vicarious liability claims, in asserting that an employer was negligent the plaintiff bears the burden of establishing that the employer's conduct was unreasonable, while in a vicarious liability claim the employer bears the burden of establishing--as an affirmative defense--that it exercised reasonable care to prevent harassment.

Conatzer, 255 F. Supp. 2d at 1271 (internal quotations and citations omitted). With regard to Home of Hope's affirmative defense, Home of Hope may have had actual or constructive notice of Wilmoth's harassing conduct prior to the July 24, 2003 incident. Whether it did or not is a question of fact, as is the issue of whether Home of Hope took reasonably prompt and effective measures to correct the allegedly hostile work environment if Sunday was notified of Wilmoth's conduct. Home of Hope is not entitled to summary judgment on its Faragher/Ellerth affirmative defense.

## IV.

**IT IS THEREFORE ORDERED** that Home of Hope's Motion for Summary Judgment (Dkt. # 13) is hereby **DENIED**.

**Dated** this 6th day of June, 2005.

_____
CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT